# CHARLESTON.

## MACKIN v. TAYLOR COUNTY COURT.

Submitted June 16, 1893.—Decided November 25, 1893.

1. TAXES—COUNTY COURT—WRIT OF ERROR.
    A county Court is not a party to an appeal taken under section 7, c. 36, Acts 1891, for re-assessment of lands by a land owner, from the decision of a County Court refusing to reduce the valuation of his land made by a commissioner under said act, and can not maintain a writ of error from this Court to the decision of a Circuit Court upon such appeal.

2. TAXES.
    Power of taxation. Its character discussed

3. TAXES. ,
    Assessment of taxes and valuation. The character of the act
    discussed.

4. TAXES—COUNTY COURT—CIRCUIT COURT—CONSTITUTIONAL LAW.
    Is the jurisdiction conferred upon Circuit Courts by section 7,
    c. 106, Acts 1891, to entertain an appeal from a decision of a County
    Court touching valuation of land by a commissioner to reassess
    lands, valid, under the constitution? Is the action of the Circuit
    Court on such appeal judicial in nature?

5. TAXES—WRIT OF ERROR—SUPREME COURT OF APPEALS.
    Can the Supreme Court of Appeals entertain a writ of error to
    the decision of a Circuit Court on such appeal?

ATTORNEY-GENERAL T. S. RILEY and L. M. LA FOLLETTE
for plaintiff in error cited Acts 1891, c. 36, s. 4; 35 N. J.
185–187; Const. Art. X, s. 1; 88 Id. 154.

W. R. D. DENT for defendant in error cited 28 W. Va.
265.

BRANNON, JUDGE:

Emily Mackin feeling herself aggrieved by the valua-
tion of a tract of land for taxation by a commissioner to re-
assess lands, applied to the County Court of Taylor county
for correction, and, that court having refused her relief,
she appealed to the Circuit Court; and, that court having
lessened the valuation of the land, the County Court of
Taylor county obtained this writ of error. Our jurisdiction
in the case is challenged, and therefore we must at once
pass upon that question, since we can render no judgment
on the merits if we have no jurisdiction.

The complaint of Mrs. Mackin is not that her land is
not subject to taxation, but that an excessive valuation,
arrived at by improper process, was placed upon the land.
Fixing the value of property for purposes of taxation is an
essential and indispensable part of the assessment of taxes,
where the taxation is based on its value. How without it
can the individual's tax be known or collected? It is a
*sine qua non* to the collection of revenue. Thus it is plain
that this Court is asked to exercise jurisdiction in a mat-
ter which is purely one of valuation for assessment of
taxes on a taxpayer's property. That important fuction

of government, the assessment of taxes, in our free republic of America, national and state, unlike the case in imperial or autocratic governments, belongs exclusively to the legislature. It is a legislative power, and in no sense judicial. This doctrine results from the very nature of our government and is universally recognized. *Meriwether* v. *Garrett*, 102 U. S. 472; Cooley Tax'n 32; *Heine* v. *Commissioners*, 19 Wall 655; *Van de Griff* v. *Haynie*, 28 Ark. 271; Desty Tax'n 81; opinion of LEE, J., in *Eyre* v. *Jacob*, 14 Gratt. 426, and opinion in *Com.* v. *Moore*, 25 Gratt. 954; Cooley Const. Lim. 479.

By our constitution, §§ 2, 5, art X, the power of taxation is expressly vested in the legislature. It would be its prerogative without that grant. The duty of ascertaining taxable values and of imposing and assessing taxes rests in the wisdom and discretion of the legislature. It possesses unquestionable power to assess taxes itself, so far as the rightful power is concerned; but the inconvenience of so doing renders this impracticable, and therefore the legislature may perform this duty through such officers, agents or tribunals as it may choose. *State* v. *Mayhew*, 2 Gill 487; *Van de Griff* v. *Haynie*, 28 Ark. 271; *Hardenbergh* v. *Kidd*, 10 Cal. 402; 1 Desty Tax'n § 97.

The power to impose taxes and assess property value for taxation being thus purely legislative, the judiciary can not exercise it, can not do any act, without authority of the legislature, which is an act of assessment of value for taxation or imposition of a tax, because the constitution, by article V, divides the state government into three distinct departments—legislative, executive and judicial—and prohibits either from exercising the powers of the other. In this great constitutional provision, common to all American states, lies the very soul of free government, distinguishing it from tyrannical government, and it is the best guaranty of order, harmony, safety and liberty. The simple fact, that one of these departments is invested with a certain function or power negatives the idea that another department may exercise it, because it would defeat the principle and letter of article V, separating them and their functions. If then the act, which this Court is

in this case asked to exercise, be one in its nature essentially an act of taxation—one relating to or forming part of the procedure in taxation—we. can not exercise the jurisdiction. It is such an act. We are called upon to act in the matter of appraisal of land for tax purposes. The commissioner appraised it. Then the County Court appraised it by approving the commissioner's action. Then the Circuit Court lowered the valuation. And this Court is asked either to fix another valuation or adopt that of the County or Circuit Court. In other words, this Court is asked to do an act which is simply one of valuation—an indispensable act in the process of taxing this land. It is a legislative function, and we can not perform it, unless there be a lawful delegation of authority to perform it. If we entertain this writ of error, we perform that function. Whence does this Court get authority to entertain this writ of error? If even any statute could give it, where is the one that does give it?

I hardly know under which of two acts the application for reduction of value was made. The petition for writ of error says it was made under section 94, c. 29, Code, while other parts of the record .indicate that the valuation was one made by a commissioner re-assessing lands under chapter 36, Acts 1891, and the application for relief under secsion 7 of that act. I regard the latter as the case. But in this case it is a matter of no import, for similar legal principles apply, and bring us to the same conclusion.

Section 7 of chapter 26, Acts 1891, provides that any one feeling aggrieved by the assessment of his land under that chapter may apply to the County Court for relief, and, if refused, may have the evidence certified and appeal to the Circuit Court. There it stops, without giving any appeal or writ of error to this Court. If it be said that the chapter providing for appeals and writs of error to this Court in cases generally comes in, and it was not necessary expressly here to grant such appeal or writ of error, then I ask, why expressly grant an appeal to the Circuit Court, when there stood the writ of *certiorari* for correction of errors in County Courts? The reason why an appeal is given by said statutes from the County Court to the Cir-

cuit Court is that, if not expressly granted, there could be
no relief by *certiorari* or in any other mode, but the decision
of the County Court would be final, because it is a rule of law
that when once a tax-valuation is made in due course, it is
final, unless the legislature has provided for a review;
and when the particular mode of review has been re-
sorted to, and fails to afford relief, there is no relief by
appeal to the courts. The taxpayer is confined to the
redress accorded by the legislature in its grace; and this,
because it is matter of taxation confided exclusively to the
legislature, which can give just such remedy for correction
or none, as it deems proper; and the matter being legislative
not judicial, the courts can not interfere. Cooley, Tax'n,
528, 529; *Insurance Co.* v. *Pollak*, 75 Ill. 292; 2 Desty,
Tax'n, 623; *Wade* v. *Commissioners*, 74 N. C. 81; *Stewart* v.
*Maple*, 70 Pa. St. 221; *International, etc., R. Co.* v. *Smith Co*,
54 Tex. 2; *Gilpatrick* v. *Inhabitants*, 57 Me. 277, and cases
cited: *Osborn* v. *Inhabitants*, 6 Pick. 98.

The fact, that the legislature has accorded to the tax-
payer an appeal from the County Court to the Circuit
Court and provided for no appeal to this Court, negatives
an intent to allow an appeal to this Court. It knew that
without an allowance of such appeal none could be had.
There is good reason for the omission to concede such ap-
peal. The act grants an appeal from the commissioner to
the County Court and from it to the Circuit Court. Should
it go further, and allow application to this Court and thus
enable every one disposed to litigate his assessment so far,
and in large measure hamper and embarrass the collection
of revenue necessary for the operation of government?

But is this writ of error justified by section 3, art. VIII,
of the constitution, or section 1, c. 135, of the Code, pre-
scribing generally the appellate jurisdiction of this Court?
It may be suggested, that it falls under that provision giv-
ing this Court appellate jurisdiction in cases concerning
the right of a corporation, county or district to levy tolls or
taxes. This does not apply, as the right to levy taxes on
this land is not in dispute, but only its valuation, and un-
der this clause the right to levy taxes must be involved.
*Miller* v. *Navigation Co.*, 32 W. Va. 52 (9 S. E. Rep. 57.)

Again, here the state is levying taxes, not merely a county or district. Does it fall under the provision that a party to a controversy in any Circuit Court may have a writ of error in "civil cases where the matter in controversy, exclusive of costs, is of greater value or amount than one hundred dollars?" It does not come under that clause, because that clause relates to the judicial functions of this Court, that is, to its appellate jurisdiction in judicial matters. To shelter a writ of error under this clause, the subject-matter must be of judicial nature—a civil case in the judicial sense of the word "case;" and this proceeding is not a case or matter in that sense, but one in assessment of taxes—simply administrative; in fact legislative. What was the nature of the proceeding before the County Court on appeal? That it was non-judicial is settled by unquestionable authority.

In *Upshur Co.* v. *Rich*, 135 U. S. Rep. 467 (10 Sup. Ct. Rep. 651) Rich applied to the County Court to reduce the valuation placed on land by the assessor, and the matter was removed into the Federal Court on the theory that it was a suit; but the United States Supreme Court held that the County Court, acting upon an assessment of taxes, was acting "not as a judicial body, but as a board of commissioners without judicial powers, only authorized to determine questions of quantity, proportion and value," and that the proceeding was not a suit," within the meaning of the act allowing removal of suits from State to Federal Courts.

In *Kansas Pac. R. Co.* v. *Commissioners of Ellis Co.*, 19 Kan. 587, the court said: "The proceedings before the county commissioners were not judicial, but in assessment. Section 65 of the tax law, under which these proceedings were had, provides simply for the correction of an assessment. It prescribes notice to the taxpayers as a condition of valid action, but such notice does not turn the proceeding from one in the nature of an assessment into a judicial inquiry Indeed, unless the legislature had prescribed notice, it is doubtful whether any were essential. Correcting an assessment is no more of a judicial act than making the assessment originally. True, it involves a determina-

tion, but so does almost every political or executive act. It is not a judicial determination."

So it is clear that the action of the County Court in such a matter is not judicial. But it may be thought that its action on appeal in the Circuit court is judicial; not any longer administrative or in assessment. Surely the inherent nature of the act has not been so quickly changed by its transfer to the Circuit Court. It is still in assessment for taxes, the same as it was before the County Court. The theory that the action of the Circuit Court is judicial must be founded, not on any change in the character of the matter involved in the Circuit Court, but on the fact, that the Circuit Court is technically a court of record proceeding according to the course of the common-law, exercising judicial functions. But it is clear that its action on this matter is the same in nature as is that of the County Court, as shown by several adjudications which I will now cite:

Under chapter 52, Acts 1883, a railroad company complaining of the assessment of its property for taxes took an appeal from the Board of Public Works to the Circuit Court and excepting to its action obtained a writ of error to this Court; and this Court held that the action of the Circuit Court in the matter was "merely administrative not judicial; the court acting in such case as an appellate assessment or tax tribunal, and exercising powers distinct from those belonging to it as a court or judicial tribunal, in the legal sense of the term." Judge Snyder used language in which he is sustained by abundant authority; and it is pointedly applicable, as the Circuit Court under that act as under this act either confirmed the assessment or made a new one. He said: "The whole scope and purpose of the statute, it seems to me, is to make the court simply an assessor to review the action of the Board of Public Works; and, if dissatisfied with said action, it may make a new assessment, and fix the true value of the property. The action of the court is of the same character, with the same elements of discretion and judgment, as that possessed by the said board, and none other. Both act according to the evidence attainable, and according to their best judgment and discretion. It is true the judgment of the court must suc-

ceed that of the board, and is in review of the latter, but that does not alter the nature of the act to be performed. Both act as assessors, and their acts are plainly ministerial, and not judicial.

"The fact that a ministerial act is performed by a court does not change the nature of the act, and make it judicial. In *McClure* v. *Maitland*, 24 W. Va. 561, this Court decided that orders and decrees of the Circuit Court, entered in proceedings for the sale of forfeited land for the benefit of the school fund, are merely ministerial or administrative acts, and in no manner judicial, and that, therefore, no appeal would lie from such orders and decrees to this Court." *Pittsburgh, C. & St. L. R'y Co.* v. *Board of Public Works*, 28 W. Va. 264.

In that case this Court refused to entertain the writ of error because, as it said, and as I say, a writ of error lies only from a court of record; and it is not enough that the court be one of record, but its action in the particular transaction or matter must be judicial in nature, not simply administrative or ministerial. That case obviously controls the decision of this case. It can not be said that there is a difference between that case and this in the fact, that that case went by appeal from the Board of Public Works, which is not a court, whereas this went from a court—the County Court to the Circuit Court. The County Court is not a court, technically—a judicial court—except as to probate matters; and it was, when acting in correction of tax assessments, held by the Supreme Court of the United States in the Upshur county case above cited to be not a court but a mere assessment board; and therefore it is no more a court as to that than the Board of Public Works.

The decision of this Court in 28 W. Va. 264, above cited is sustained by the cases cited by Judge SNYDER, and others I have met.

In *Kimber* v. *Schuylkill Co.*, 20 Pa. St. 356, an act allowed a freeholder dissatisfied with a decision of the commissioner in adjusting taxes to appeal to the Court of Common Pleas, which was to affirm or reduce the assessment. The Court of Common Pleas was a court of record. The Supreme Court would not entertain *certiorari*. It said:

"It is very easily seen that the legislature did not intend to give this Court the jurisdiction to hear the case over again, and reverse the decree of the common pleas. * * * The judges, when hearing these appeals, are acting as assessors of taxes. We venture to hope that it will be many years before we will be called upon to review the assessments of every man in the commonwealth who is dissatisfied with the taxes charged against him. * * * When a special jurisdiction is conferred on inferior courts, no appeal lies to this court, unless expressly given."

This case shows that it was a mere tax assessment though on appeal to a court of record and no appeal would lie to the Supreme Court; and, second, that the taxpayer had no remedy beyond the court specified by the tax-act for his relief. It made no difference that the appeal from the auditor assessing corporate property was to the Circuit Court in the Michigan case (*Auditor General* v. *Pullman Palace Car Co.*, 34 Mich. 59) cited by Judge SNYDER in 28 W. Va. 268. The Supreme Court refused to entertain a writ of error.

I therefore reach a like conclusion with that expressed by him—that the decisions establish beyond the propriety of a difference of opinion, that the decision of a designated officer or board, be it a court or not, in reviewing a tax assessment, is no more judicial than was the original assessment by the assessor; and such decision, even though it be by a court or other tribunal of record, is not judicial, and can not be reviewed by a supreme court or appellate court possessing judicial appellate powers only.

I will add that another consideration forbidding the theory that, when the matter reached the Circuit Court, it became a case, in the judicial sense, so as to give a writ of error to this Court, is that it went to the Circuit Court by appeal. The act in question does not provide for exceptions, but simply says the evidence may be certified. On the appeal new evidence may be adduced. It is only a new trial of the matter. The *prima facie*, and most proper, meaning of an "appeal"—though it has different meanings, according to its use—is a process continuing the same suit, in order to obtain a rehearing in the appellate court, wherein new evidence may be allowed, and a new trial as

if never tried, as in appeals from justices. See in *Bailey* v. *McCormick*, 22 W. Va. 102, 103; *Bratt* v. *Marum*, 24 W. Va. 652; *Fouse* v. *Vandervort*, 30 W. Va. 331 (4 S. E. Rep. 298); 2 Tucker, 336.

Thus I have shown that there is no act expressly giving a writ of error to this Court on the decision by a Circuit Court of an appeal from a County Court in a matter of correction of an assessment for taxes, and also that no writ of error lies under the general statute providing for appeals and writs of error. And I entertain the opinion held in *Pittsburg, C. & St. L. Ry. Co.* v. *Board of Public Works*, 28 W. Va. 264, that as the jurisdiction of the Supreme Court of Appeals, whether original or appellate, is, by the letter and true spirit and intention of the constitution, wholly judicial, the legislature could not confer jurisdiction of any other cast or quality upon that court, and that if it were, by explicit enactment, to confer power on this Court to entertain a writ of error or appeal, or other form of process to review a decision of the County Court in a matter of correction of an assessment of value for taxation, the act would be void, as contrary to article VIII, § 3, of the constitution. For the reason that the jurisdiction of the supreme court of Kansas is confined to matters of judicial nature, it was held in *State Auditor* v. *Atchison etc., R. Co.*, 6 Kan. 500, that a statute giving an appeal to its supreme court from the appraisment of railroad property for taxes was unconstitutional, because the power to tax is legislative, and valuation for taxes was a necessary incident to that power, and not such judicial power as could be conferred on the supreme court. The opinion in that case more clearly expresses this distinction than I have elsewhere found. See Story Const. § 1761.

As this Court, by the constitution, is incompetent to receive jurisdiction in such a matter as this, we ought not to give section 1, c. 135, Code, such a construction and application as to militate against the constitution. The second point in *Pittsburg, C. & St. L. Ry. Co.* v. *Board of Public Works*, 28 W. Va. 264, distinctly holds that the constitution repels such a writ of error from this Court.

Had the Circuit Court jurisdiction of the appeal? It

may be said that it had not, as the matter is not judicial but administrative, and that the legislature could not confer upon a court of judicial functions like the Circuit Court power to act up on such a matter, nor on persons holding judicial positions this non-judicial function. If this were so, then it would be a question whether this Court ought not to entertain the present writ of error; for, if the Circuit Court entertain and act upon a matter outside its jurisdiction, it might plausibly be said in assuming jurisdiction, and thus deciding it had jurisdiction, it created a judicial question, which would come within the authority of this Court—that is, upon and to the sole question of the Circuit Court's jurisdiction, and also as involving the constitutionality of a law. But the best opinion which I can form is that the Circuit Court had jurisdiction in the matter, because, and only because, the legislature in its grace and liberality to the tax-payer conceded him this appeal to the Circuit Court. The legislature, having exclusively the power of taxation and all steps incident thereto and essential to its existence, may select the agents by which it may ascertain the taxable value of property instead of doing so directly itself. *Van de Griff* v. *Haynie*, 28 Ark. 270.

Now there is a difference between the Supreme Court of Appeals and Circuit Courts in respect to their capacity to have conferred upon them such jurisdiction. While as I have above sought to show, this Court could not be given such jurisdiction, because its appellate functions are confined to judicial matters, yet it is different with Circuit Courts, since section 12, Art. VIII, of the constitution after conferring upon them certain supervisory, original and appellate jurisdiction adds the clause. "They shall also have such other jurisdiction, whether supervisory, original, appellate or concurrent, as is or may be prescribed by law." I think this clause authorizes the legislature to confer upon the Circuit Court the right to entertain this appeal. The presence of this very important court among the people in every county; its readiness, facility and competency in the hearing and trial of matters by witnesses, juries and otherwise;—the obvious necessity of a power in the legislature to render available and useful its functions in the administration of

government by charging it with jurisdiction of additional matters, as time and expediency may suggest;—the whole cast, structure and purpose of this court, as seen in the constitution—tell us that we ought not to give a narrow construction to this clause. To do so would defeat the purpose of the convention, which framed the constitution, and cramp the usefulness of the Circuit Courts. Besides this, there is the plain act of the legislature giving the appeal to the Circuit Court. If we doubted, we would, in deference to the act of the representatives of the sovereignty of the people numbering among them many of the ablest minds of the state, recognize its validity. Courts can not too often repeat, what has been so often stated that it seems threadbare—that all courts, while they may defend the constitution and the rights of the people under it even against the legislature, yet in so doing they must move with the most solemn caution, resolve all doubts in favor of the act, and never, except where the act is very plainly, palpably and beyond doubt violative of the constitution, overthrow an act of the legislature. Opinions in *Bridges* v. *Shallcross*, 6 W. Va. 568, and *Com.* v. *Moore*, 25 Gratt. 954; *Slack* v. *Jacob*, 8 W. Va. 612.

How did the Virginia County Courts, which were judicial and of general jurisdiction, so many years correct assessments and lay county levies? If there was a show of constitutional power after the constitution of 1851, how as to this before that? *Ballard* v. *Thomas*, 19 Gratt. 14. How did the Virginia courts get jurisdiction to sell forfeited lands? But in order not to be misunderstood, though the Circuit Court has lawful jurisdiction to entertain an appeal from the County Court in the matter of correction of an assessment of taxes, yet it is only by delegation by the legislature to the Circuit Court of its taxing power—not in any sense a judicial act, but simply administrative or ministerial, and not the subject of a writ of error to this Court.

I have not overlooked the fact that the case of *Pittsburg, C. & St. L. Ry. Co.* v. *Board of Public Works*, 28 W. Va. 264, overrules the second point of the syllabus in *Low* v. *County Court*, 27 W. Va. 785, which held that an appeal lies, under

section 94 of chapter 161 of the Acts of 1882, from a judgment of a County Court refusing to correct an assessment, where it is claimed that the party assessed with taxes is not chargeable therewith. Does it mean that no appeal lies to the Circuit Court from the County Court? I think not. Taking the opinion in 28 W. Va., it is plain that the Court did not decide on the question of the jurisdiction of the Circuit Court of an appeal from the County Court, and that this decision means only that there is no jurisdiction in this Court in such case.

Another difficulty in the way of the County Court's success has just occurred to me. How can it prosecute this writ of error? The case before the lower courts was not a suit. The County Court was not a party. The state and the taxpayer were the only parties, in any sense. The statute (Acts 1891, c. 36, § 7) gives an appeal to the Circuit Court only to the landowner and the state, not to the County Court. As it could not prosecute an appeal in the Circuit Court, how could it possibly complain of error, when it could not have been a party in that court. The state only was engaged in tax valuation, and the county was interested only consequentially, under and through the state. The state represents it. It is not a party.

I think it proper to decide this case both on want of jurisdiction, and want of right in the plaintiff in error to prosecute the writ of error, giving both as reasons for dismissal, and making a syllabus as to both points, under the requirement that we shall decide all points arising on the record ; but, as the plaintiff in error is held as having no right to maintain a writ of error, the syllabus is confined to that point ; Judges ENGLISH and HOLT not deeming it necessary to adopt a broader syllabus in this particular case, as the County Court has no right to maintain the writ. Writ of error dismissed.